**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Naomi B. Spector, Esq. (SBN 222573)
naomi@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

[Other Attorneys on Signature Page]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AMIR KAZEMZADEH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiff,<br><br>v.<br><br>**SAN FRANCISCO 49ERS AND TICKETMASTER L.L.C.**<br><br>Defendants. | **Case No.:**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>1.) **SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1**<br><br>2.) **SECTION 2 OF THE SHERMAN ACT, 15 U.S.C. § 2**<br><br>3.) **TRESPASS TO CHATTELS**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. Plaintiff Amir Kazemzadeh ("Plaintiff" or "Mr. Kazemzadeh") brings this action against the San Francisco 49ers and Ticketmaster L.L.C. (collectively, "Defendants") for violations of Sections 1 and 2 of the Sherman Act based on Defendants' anticompetitive practices to dominate and restrict ticket sales to 49ers National Football League ("NFL") games.   In addition, Defendants intentionally interfered with Plaintiff's use and possession of his season tickets to his detriment.

2. The vast majority of tickets to 49ers games are sold to season ticket holders. Those ticket holders in turn often resell tickets to individual games, frequently through online websites such as vividseats.com, ticketnetwork.com, stubhub.com or ticketcity.com ("Ticket Websites").   Until this year (the 2015/2015 NFL Season), a season ticket holder could list his or her 49ers game tickets on the Ticket Website of his choice.   When a buyer made a purchase, the seller would print the tickets, upload them to the website, and complete the transaction.

3. As he had done for the past three NFL seasons, Plaintiff attempted to list the 49ers tickets that he would not be using for the 2015/2016 Season on a Ticket Website.   Once he obtained a buyer on that website, however, Plaintiff was denied the ability to print or upload his tickets.   The ticket sales account representative informed Plaintiff that the 49ers had decided to limit the release of season tickets until 72 hours prior to the game, ***unless the tickets were accessed and sold through the NFL Ticket Exchange*** ("Ticket Exchange"): "You can now buy tickets directly from other fans -- and sell your tickets when you can't go -- using the official NFL Ticket Exchange powered by Ticketmaster.   Buyers can print their tickets right away and rest assured knowing their tickets are 100% legitimate, and sellers never have to deal with

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

ticket delivery or collecting payment."[1]

4. By mandating and ensuring that advance sales of single game tickets can only be made through the Ticket Exchange, Defendants are restraining competition and harming consumers, including in the following ways:  First, sellers and purchasers are required to pay the fees associated with the Ticket Exchange website, and are prevented from shopping for or paying a lower fee associated with another vendor or website.  Second, sellers are prevented from printing and independently selling, transferring or gifting their tickets, without an associated e-commerce fee, until 72 hours prior the applicable game.  Third, the Ticket Exchange sets a price floor for tickets to prevent prices from falling below face value.  This is in contrast to other Ticket Websites, which permit the free market and buyers and sellers to determine the applicable ticket prices.  Finally, if sellers wait and list their tickets on a Ticket Website when they become available 72 hours prior to a game, the sales price may be affected by factors such as delay or team performance.

5. On information and belief, Defendants benefit from their anticompetitive practices by receiving kickbacks, incentives, sales percentages, or other financial gains.

6. Plaintiff is an individual who was, and continues to be, harmed by Defendants' conduct, including by being denied access to his season tickets and unable to complete a sale for his 49ers game tickets through Ticket Websites, other than the Ticket Exchange, and being precluded from printing his tickets and selling or gifting them by any means other than through e-commerce.

7. Plaintiff, individually and on behalf of all others similarly situated, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies.  Plaintiff alleges as follows upon personal

[1] http://www.nfl.com/tickets.  Accessed on August 4, 2015.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

8. Plaintiffs bring this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. This Court has subject matter jurisdiction over that claim pursuant to 28 U.S.C. §§ 1331 and 1337.

9. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in the United States District Court, Northern District of California pursuant to 28 U.S.C. § 1391 for the following reasons:

    (i)     The conduct complained of herein occurred within this judicial district as Plaintiff purchased his 49ers Season Tickets in this district, and the 49ers Stadium is in this judicial district;

    (ii)     Defendants conducted and do substantial business in this judicial district; and

    (iii)     Defendants are subject to personal jurisdiction in this district.

## PARTIES

11. Plaintiff is, and at all times mentioned herein was, an individual citizen and resident of the city of Santa Clara, State of California. Plaintiff entered into a Stadium Builders License Agreement ("SBL") with the Santa Clara Stadium Authority in June of 2012, which enabled him to buy season tickets for each 49ers season. Plaintiff purchased Season Tickets for the 2015/2016 National Football League season. Plaintiff made all of his payments on time; however, he was not able to access his 2015/2016 Season Tickets for sale or printing until 72 hours prior to each game.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

12. Defendant San Francisco 49ers is a member of the National Football League, Inc., which is an unincorporated association of the thirty-two major league men's professional football teams in the United States, with its headquarters located at 345 Park Avenue, 7th Floor, New York, New York. The 49ers team is owned by Jed York.

13. Defendant Ticketmaster L.L.C. ("Ticketmaster") is a wholly-owned subsidiary of Live Nation Entertainment, Inc. Ticketmaster is a limited liability company organized and existing under the laws of Virginia, with its principal place of business at 7060 Hollywood Blvd., Hollywood, California. Ticketmaster is the largest ticketing company in the United States, with revenue in 2014 of approximately $1.55 billion. Ticketmaster owns and operates the NFL Ticket Exchange.

## FACTUAL ALLEGATIONS

### A.   The Stadium Builders License Agreement

14. Levi's Stadium is located in Santa Clara, California, and is home to the San Francisco 49ers. Construction on the stadium began in 2012, and Levi's Stadium officially opened in July of 2014. Levi's Stadium has a limited number of seats for 49ers games (approximately 68,500), which are in high demand.

15. Seats in Levi's Stadium are sold through a SBL, which requires licensees to purchase tickets for the entire season. *See* http://www.levisstadium.com/49ers-games/tickets-suites/. Season ticket prices appear to range from $2,000 to $80,000. http://www.levisstadium.com/wp-content/uploads/2015/06/2015-LS-49ERS-PRICING-MAP.jpg. Tickets for the current NFL season are subject to a SBL waitlist.

16. On June 8, 2012, Plaintiff entered into a Stadium Builders License Agreement ("License Agreement") for the right to purchase annual season tickets for four seats to the San Francisco 49ers games. Since that time, Plaintiff has

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

purchased 49ers tickets for each NFL season.

**B.** **Defendants Prevented Plaintiff From Accessing his Tickets for the 2015/2016 NFL Season**

17. During each of the NFL seasons for 2012/2013, 2013/2014, and 2014/2015, Plaintiff posted any tickets for games that he would not be able to attend on a Ticket Website.  Plaintiff posted the tickets in advance of the game, once he made the determination that he would not be using them.  Previously, when a buyer made a purchase, Plaintiff would access and print the tickets and then upload them to the Ticket Website to complete the sale.

18. As he had done for the past three years, Plaintiff listed some of his tickets for the 2015/2016 season on the StubHub.com website.  One set of tickets sold within 24 hours of the listing.  Plaintiff went to his account manager to print the tickets so that he could upload them onto the StubHub website.   But Plaintiff was denied the ability to access his tickets for printing.

19. Plaintiff was informed by his account representative that the 49ers had decided that, for the 2015/2016 season, they would release tickets to season ticket holders no sooner than 72 hours prior to the game.

20. The account representative also informed Plaintiff that the only way to obtain early or immediate access to his tickets was through the NFL Ticket Exchange.

21. According to the Levi's Stadium website, although "the vast majority of seats for 49ers games at Levi's® Stadium are already reserved through Stadium Builder's Licenses, a limited number of single game tickets may become available for each home game."   Such tickets may be purchased "through Ticketmaster and the Visa Box Office at Levi's Stadium."    http://www.levisstadium.com/49ers-games/tickets-suites/.

22. According to nfl.com, the website of the National Football League, the NFL Ticket Exchange, powered by Ticketmaster, is the only NFL-approved way to

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

buy tickets from other fans, and sell tickets when ticker holders can't attend. *See* http://www.nfl.com/tickets.  According to the website, "**[b]uyers can print their tickets right away** and rest assured knowing their tickets are 100% legitimate, and sellers never have to deal with ticket delivery or collecting payment." (Emphasis added).  Included among the listed teams for which approved tickets must be purchased on the Ticket Exchange is the San Francisco 49ers.

## C.  Defendants' Conduct Limits Competition to the Detriment of Ticket Buyers and Sellers

23. Plaintiff and other season ticket holders have been harmed by Defendants' anticompetitive practices in a variety of ways.

24. Ticket Exchange charges steep transaction fees for use of the site.  According to blog.tickpick.com, the NFL Ticket Exchange fees are hard to determine from the face of the Ticket Exchange website, but are 15% for buyers, with a 10% surcharge to season ticket holders, and a 15% service fee.  *See* http://blog.tickpick.com/nfl-ticket-exchange-review/.

25. On information and belief, Ticket fees for the Ticket Websites are less than those charged by Ticket Exchange.  VividSeats.com, for example, does not charge a fee for listing tickets, but charges a 10% commission after the sale is complete.  http://www.vividseats.com/faq.html.  Similarly, Ticketcity.com does not charge a seller's fee, but charges a service fee.  https://www.ticketcity.com/faq.html.  StubHub.com chargers the buyer a 10% fee and the seller a 15% fee for each completed transaction.  http://mlb.mlb.com/ticketing/stubhub_faq_seller.jsp?c_id=mlb.

26. By denying Plaintiff the ability to access and print his tickets until 72 hours prior to an applicable game, Defendants are precluding Plaintiff from making face-to-face sales, transfers, or gifts.  Thus, Plaintiff can no longer give or sell tickets to a friend or neighbor in advance of a game, and is prevented from

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

gifting tickets or otherwise donating them for charitable purposes.  Outside of the 72-hour window, Plaintiff is now wholly precluded from independently selling or transferring his tickets without using an intermediary or paying the associated fees and costs.

27. In addition, Ticketmaster's Ticket Exchange "sets an arbitrary price floor on tickets, a floor that is undisclosed to the purchaser.  It is the NFL's attempt to take over the secondary market and keep ticket prices, which were already sold once, from being resold at low prices."[2]   What this means is that consumers cannot purchase tickets from Ticket Exchange if prices have fallen below face value, to the detriment of buyers and sellers.  Furthermore, on information and belief, Defendants get a piece of the secondary Ticket Exchange sale through the associated transaction fees and costs.

28. For previous NFL seasons, Plaintiff could list and upload 49ers tickets to StubHub.com at any time after completing his payments under the SBL.  Thus, by listing the tickets prior to the commencement of the NFL season, the sales price was relatively static.  By contrast, if Plaintiff were required to sell and upload tickets a mere three days before a 49ers game, the market price could be negatively affected by numerous factors, including the inability of consumers to purchase or plan in advance, and the 49er's season performance to date.

29. In 2010, the Federal Trade Commission sued Ticketmaster for using its market power in certain ticketing arenas to unfairly and deceptively steer lead consumers to use Ticketmaster, and overpricing the tickets sold on its website, up to quadruple the face value.[3]   Despite the FTC's action, Ticketmaster's anticompetitive practices have continued.

[2]  *See* http://www.forbes.com/sites/realspin/2014/09/18/how-ticketmaster-and-the-nfl-have-fixed-the-price-of-secondhand-tickets/.  Accessed August 4, 2015.

[3]  https://www.ftc.gov/news-events/press-releases/2010/02/ticketmaster-ticketsnow-settle-ftc-charges-deceptive-sales.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**D.** **The Exclusivity Agreement By And Among Defendants Has Restrained Horizontal Competition and Has Had Anticompetitive Effects**

30. The above-described conduct has restrained horizontal competition between and among online ticket sellers with respect to the listing for sale and selling of 49ers game tickets.   In particular, in the absence of Defendants' determination that tickets can only be sold in advance on Ticket Exchange, season ticket holders could list and sell 49ers tickets on any Ticket Website, or could print the tickets and sell, transfer or gift them without the use of an intermediary.

31. The above-described conduct has adversely affected and substantially lessened competition in the relevant markets.   The number of 49ers tickets listed on Ticket Websites has declined, while the number of 49ers tickets listed for sale on Ticket Exchange has increased.

32. Competition by and among Ticket Websites would produce consumer benefits, including by stabilizing ticket prices and associated fees. Furthermore, if consumers were able to print their tickets and engage in advance sales that did not involve e-commerce, Ticket Websites and the Ticket Exchange would have to set fees and costs that account for this fact.   By requiring that any and all advance ticket sales be transacted over the Internet, Defendants have foreclosed all other markets for selling 49ers game tickets.

33. The above-described agreements do not concern matters of league structure and do not concern any unique characteristic or need of football ticket sales. These anticompetitive restraints are not necessary for the sale of NFL tickets.

34. There are no legitimate, pro-competitive justifications for these exclusive agreements and other competitive restraints, which have harmed consumers in various ways, including as described above.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

E. **Plaintiff Has Been Denied the Use and Possession of His Tickets, To His Detriment**

35. Defendants have intentionally denied Plaintiff the ability to access his season tickets for printing until 72 hours before a game, unless he accesses the tickets through the Ticket Exchange.

36. Plaintiff has been prevented from selling, gifting or transferring the tickets in advance by the method of his choice, or without paying the associated Ticket Exchange fees and costs.

## CLASS ACTION ALLEGATIONS

37. Plaintiff and the members of the Class have suffered injury as a result of the Defendants' conduct.

38. The "Class Period" means four years prior to filing of the Complaint in this action.

39. Plaintiff brings this lawsuit on behalf of himself and other consumers similarly situated throughout the United States under the provisions of Rule 23(a), (b)(2) of the Federal Rules of Civil Procedure. Subject to additional information obtained through further investigation and/or discovery, the proposed "Class" consists of:

> "All persons who purchased 49ers NFL season tickets
> for the 2015/2015 NFL Season."

Excluded from the Class are Defendants and any of their officers, directors, and employees. Plaintiff reserves the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

40. *Ascertainability.* The members of the Class are readily ascertainable from Defendants' records and/or Defendants' agent's records regarding season ticket holders, as well as through public notice.

41. *Numerosity*. The members of the Class are so numerous that their individual

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class consists of tens of thousands of members.

42. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct. The common legal and factual questions include, but are not limited to, the following:

    (a)   Whether Defendants and their co-conspirators engaged in a contract, combination, or conspiracy among themselves to fix, raise, maintain or stabilize ticket prices for 49ers games by preventing any website other than Ticket Exchange from offering tickets;

    (b)   Whether Defendants and their co-conspirators engaged in a contract, combination, or conspiracy among themselves to eliminate all other markets for advance ticket sales to 49ers games, other than e-commerce through the Ticket Exchange;

    (c)   The effect of Defendants' conspiracy on the prices of 49ers tickets, including the fees paid by buyers and sellers, in the United States during the class period;

    (d)   The identity of the participants of the conspiracy;

    (e)   The duration of the conspiracy alleged herein and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

    (f)   Whether the alleged conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

    (g)   Whether the alleged conspiracy violated Section 2 of the Sherman Act, 15 U.S.C. § 2;

    (h)   Whether Defendants' conduct constitutes trespass to chattels;

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

(i)   Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the Plaintiff and members of the Class; and

(j)   The appropriate class-wide measure of injunctive relief.

43. ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff, like members of the proposed Class, is a 49ers season ticket holder who was unable to upload or print his tickets, unless he accessed them from the NFL Ticket Exchange, or until 72 hours prior to the applicable 49ers game.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent members of the Class.   Defendants have no defenses unique to the Plaintiff.

44. ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer protection law, including class actions.  Plaintiff has no adverse or antagonistic interest to those in the Class, and will fairly and adequately protect the interests of the Class.  Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

45. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and court system and the issues raised by this action.  The damages or other detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant.   The injury suffered by each individual member of the proposed class is relatively

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.   It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them.   Even if the members of the proposed Class could afford such litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.    Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23(b)(3).

46. Unless the Class is certified, Defendants and their co-conspirators will retain monies received as a result of the Defendants' conduct alleged herein.  Unless a class-wide injunction is issued, Defendants and their co-conspirators will also likely continue to engage in anti-competitive agreements, and members of the Class will continue to suffer injury as a result.

47. Defendants have acted or refused to act on grounds that are generally applicable to the class so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed. R. Civ. P. 23(b)(2).

## FIRST CAUSE OF ACTION

## FOR VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT

## 15 U.S.C § 1

48. Plaintiff repeats, re-alleges and incorporates by reference the above allegations as if fully stated herein.

49. Plaintiff brings this cause of action on behalf of himself and on behalf of the putative Class.

//

---

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

50. Beginning at a time presently unknown to Plaintiff, and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, combination, or conspiracy in restraint of trade with the purpose, intent, and effect of restraining horizontal competition among 49ers season ticket holders, buyers and Ticket Websites, with the purpose, intent, and effect of restraining trade and commerce in the distribution and sale of 49ers game tickets, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

51. The contract, combination, or conspiracy has resulted in an agreement, understanding, or concerted action between and among the Defendants and their co-conspirators that the NFL Ticket Exchange will be the only NFL-approved way to buy tickets, and the only way for season ticket holders to access their tickets, until 72 hours prior to the applicable game.

52. The contract, combination, or conspiracy has restrained competition between and among the Defendants in violation of Section 1 of the Sherman Act. It has led to anticompetitive effects in the relevant markets, as alleged above, and caused injury to consumers and competition in those relevant markets and elsewhere.

53. The Defendants' contract, combination, agreement, understanding, or concerted action with their co-conspirators occurred in or affected interstate commerce. The Defendants' unlawful conduct was through mutual understandings, combinations, or agreements by, between, and among the Defendants and other unnamed co-conspirators. These other co-conspirators have either acted willingly or, due to coercion, unwillingly in furtherance of the unlawful restraint of trade alleged herein, and for their own pecuniary gain.

54. Defendants' anticompetitive conduct has directly and proximately caused antitrust injury, in the form of higher prices and reduced choice, as set forth

above.  Plaintiff and other consumers will continue to suffer antitrust injury and other damage unless Defendants are enjoined from continuing to engage in the foregoing violations of law.

## SECOND CAUSE OF ACTION

## FOR VIOLATIONS OF SECTION 2 OF THE SHERMAN ACT

## 15 U.S.C § 2

55. Plaintiff repeats, re-alleges and incorporates by reference the above allegations as if fully stated herein.

56. Defendants and their co-conspirators, by the above-mentioned conduct, possess monopoly power over the market for 49ers tickets for the purposes of unreasonably excluding and/or limiting competition, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  These activities have gone beyond those which could be considered as "legitimate business activities," and are an abuse of market position.

57. Through the anti-competitive conduct described herein, Defendants and their co-conspirators have willfully acquired and maintained, and unless restrained by the Court, will continue to willfully maintain, that monopoly power by anti-competitive and unreasonably exclusionary conduct.  Defendants and their co-conspirators have acted with an intent to illegally acquire and maintain that monopoly power in the relevant product market, and their illegal conduct has enabled them to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

58. Defendants' anticompetitive conduct has directly and proximately caused antitrust injury, as set forth above.  Plaintiff and other consumers will continue to suffer antitrust injury and other damage unless Defendants are enjoined from continuing to engage in the foregoing violations of law.

//

//

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### THIRD CAUSE OF ACTION

### FOR TRESPASS TO CHATTELS

59. Plaintiff has the right to use and posses his 2015/2016 49ers NFL season tickets.  As he had done with prior season tickets, this includes the right to access and print those tickets.

60. As described herein, Defendants intentionally interfered with Plaintiff's use and possession of his 49ers season tickets.   Among other things, Plaintiff was prevented from accessing or printing his tickets in advance, and selling, transferring or gifting them by the mechanism of his choice.

61. Plaintiff did not consent to Defendants' conduct.

62. Plaintiff was harmed by Defendants' conduct.   Among other things, Plaintiff was prevented from completing a sales transaction for tickets listed on StubHub.com.   Plaintiff was also prevented from printing his tickets, and selling, gifting or transferring them.

63. Defendants' conduct was intentional, wanton and reckless in complete disregard of the Plaintiff's property rights ad the rights of 49ers season ticket holders.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants, and that Plaintiff and Class members be awarded damages from Defendants as follows:

- That this action be certified as a Class Action, Plaintiff be appointed as the representative of the Class, and Plaintiff's attorneys be appointed Class counsel;

- That the contract, combination, or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators as alleged in this Complaint, be adjudged to have been a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

- That the Defendants' and their co-conspirators' actions to illegally acquire and maintain monopoly power in the relevant product market, be adjudged to have been a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;
- That judgment be entered for Plaintiff and members of the Class against Defendants as allowed by law, together with the costs of this action, including reasonable attorneys' fees, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26;
- That Defendants and their co-conspirators be enjoined from further violations of the antitrust laws;
- That Plaintiffs and the members of the class be awarded punitive damages and all other forms of equitable monetary relief, as pleaded;
- That there be a distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendants from retaining the benefits of their wrongful conduct; and
- That Plaintiff and members of the Class have such other, further or different relief, as the case may require and the Court may deem just and proper under the circumstances.

## TRIAL BY JURY

E.    Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 5, 2015                                    Respectfully submitted,

                                                         **KAZEROUNI LAW GROUP, APC**

                                                         By:   /s/ Abbas Kazerounian
                                                              Abbas Kazerounian
                                                              ATTORNEY FOR PLAINTIFFS

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Additional Counsel for Plaintiffs:

**RKR Legal, APC**
S. Masih Rezvanpour, Esq. (SBN: 272148)
mk@rkrlegal.com
245 Fischer Ave, Suite D1
Costa Mesa, CA 92626
Telephone:  (866) 502-0787
Facsimile: (866) 502-5065