Derek Ludwin (*pro hac vice*)
Ross A. Demain (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000 (telephone)
(202) 662-6291 (facsimile)
dludwin@cov.com
rdemain@cov.com

Ashley Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
(415) 591-6000 (telephone)
(415) 591-6091 (facsimile)
asimonsen@cov.com

*Attorneys for Forty Niners Football Company LLC*

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIR KAZEMZADEH, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>    v.<br><br>FORTY NINERS FOOTBALL COMPANY, AND TICKETMASTER L.L.C.<br><br>    *Defendants*. | Civil Case No.: 5:15-cv-03593 NC<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:         March 2, 2016**<br>**Time:         1:00 p.m.**<br>**Courtroom: 7**<br>**Judge:       Hon. Nathanael Cousins** |

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................................2

I.    Plaintiff Fails To Allege A Cognizable Market Under The Sherman Act.....................3

      A.    The Amended Complaint Fails To Identify A Specific Relevant Product Market.............3

      B.    Any Alleged "Resale Market" For 49ers Tickets Would Impermissibly Exclude
            Reasonably Interchangeable Products. ..................................................................6

II.   Plaintiff Does Not Adequately Allege Antitrust Injury. ..............................................11

      A.    Plaintiff Fails Adequately To Allege Harm To Competition...............................11

      B.    Plaintiff Does Not Allege Antitrust Injury.........................................................14

III.  Plaintiff Fails To State A Claim For Trespass To Chattels. ........................................16

CONCLUSION ...........................................................................................................17

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adidas Am., Inc. v. NCAA,*
 64 F. Supp. 2d 1097 (D. Kan. 1999) ...............................................................................9

*American Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.,*
 190 F.3d 1051 (9th Cir. 1999) .......................................................................................15

*Apple, Inc. v. Psystar Corp.,*
 586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...................................................................8, 9, 10

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ....................................................................................................2, 3

*Blizzard Ent. Inc. v. Ceiling Fan Software LLC,*
 941 F. Supp. 2d 1227 (C.D. Cal. 2013) ..........................................................................10

*Brantley v. NBC Universal, Inc.,*
 675 F.3d 1192 (9th Cir. 2012) .................................................................................11, 12

*Brown Shoe Co., Inc. v. United States,*
 370 U.S. 294 (1962) .......................................................................................................10

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,*
 429 U.S. 477 (1977) .......................................................................................................11

*Burgert v. Lokelani Bernice Pauahi Bishop Trust,*
 200 F.3d 661 (9th Cir. 2000) ...........................................................................................2

*Carell v. Shubert Org., Inc.,*
 104 F. Supp. 2d 236 (S.D.N.Y. 2000) ...........................................................................8, 9

*Cascades Computer Innovation LLC v. RPX Corp.,*
 2013 WL 316023 (N.D. Cal. Jan. 24, 2013) ..............................................................4, 5, 6

*Colonial Med. Grp., Inc. v. Catholic Healthcare W.,*
 2010 WL 2108123 (N.D. Cal. May 25, 2010) ..................................................................3

*Digital Equip. Corp. v. Uniq Digital Techs., Inc.,*
 73 F.3d 756 (7th Cir. 1996) .............................................................................................8

*Dutra v. BFI Waste Mgmt. Sys. of N. Am., Inc.,*
 2015 WL 2251203 (N.D. Cal. May 13, 2015) ..................................................................4

*Emps. Trust Fund v. Am. Empire Building Corp.*,
  2015 WL 4538070 (N.D. Cal. July 27, 2015)..................................................15

*Formula One Licensing, B.V. v. Purple Interactive Ltd.*,
  2001 WL 34792530 (N.D. Cal. Feb. 6, 2001) ....................................................9

*Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*,
  960 F. Supp. 701 (S.D.N.Y. 1997)..................................................................10

*Hack v. President & Fellows of Yale Coll.*,
  237 F.3d 81 (2d Cir. 2000)................................................................................8

*In re ATM Fee Antitrust Litig.*,
  768 F. Supp. 2d 984 (N.D. Cal. 2009) ..............................................................7

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 914 (9th Cir. 2015) ..........................................................................14

*Intel Corp. v. Hamidi*,
  71 P.3d 296 (Cal. 2003) ..................................................................................16

*Johnston v. Tampa Sports Auth.*,
  530 F.3d 1320 (11th Cir. 2008) ......................................................................16

*Kandel v. Brother Int'l Corp.*,
  2009 WL 9100406 (C.D. Cal. Feb. 13, 2009) ..................................................16

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ......................................................................2, 3

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
  2008 WL 686834 (N.D. Cal. Mar. 11, 2008)..............................................14, 15

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008)..............................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)........................................................................................12

*name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
  2013 WL 2151478 (C.D. Cal. Mar. 4, 2013) ..................................................14

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
  795 F.3d 1124 (9th Cir. 2015) ........................................................................14

*Newcal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038 & 4 (9th Cir. 2008) ..............................................................3, 10

**NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF**
Civil Case No.: 5:15-cv-03593 NC

iii

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997)..............................................................................6, 7

*Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*,
    812 F. Supp. 387 (S.D.N.Y. 1993).....................................................................8, 9

*Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*,
    2015 WL 5731736 (N.D. Ill. Sept. 30, 2015) ...................................................9, 10

*Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*,
    802 F. Supp. 1544 (S.D. Tex. 1991) .....................................................................5

*Seattle Totems Hockey Club, Inc. v. NHL*,
    783 F.2d 1347 (9th Cir. 1986) ........................................................................11, 12

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ..........................................................................11, 15

*Spinelli v. NFL*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015).......................................................................9

*Stubhub, Inc. v. Golden State Warriors, LLC*,
    2015 WL 6755594 (N.D. Cal. Nov. 5, 2015) ......................................................6, 7

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)..............................................................................................8

*Tanaka v. Univ. of S. Cal.*,
    252 F.3d 1059 (9th Cir. 2001) ...................................................................3, 7, 8, 10

*Theatre Party Associates, Inc. v. Shubert Org., Inc.*,
    695 F. Supp. 150 (S.D.N.Y. 1988).......................................................................9

*Thrifty-Tel, Inc. v. Bezenek*,
    54 Cal. Rptr. 2d 468 (Ct. App. 1996)...................................................................16

*Ticketmaster LLC v. Designer Tickets & Tours, Inc.*,
    2008 WL 649804 (C.D. Cal. Mar. 10, 2008) .........................................................5

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
    536 F. Supp. 2d 1191 (C.D. Cal. 2008) ..........................................................3, 5, 7

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001).................................................................................7

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
    959 F.2d 468 (3d Cir. 1992)..................................................................................8

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*,
 964 F.2d 1022 (10th Cir. 1992) ...................................................................8

*United States v. E. I. du Pont de Nemours & Co.*,
 351 U.S. 377 (1956).....................................................................................7

*Valley Prods. Co. v. Landmark, a Div. of Hosp. Franchise Sys., Inc.*,
 128 F.3d 398 (6th Cir. 1997) .....................................................................12

*Weber v. NFL*,
 112 F. Supp. 2d 667 (N.D. Ohio 2000).......................................................9

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
 588 F.3d 659 (9th Cir. 2009) ......................................................................3

*Williams v. NFL*,
 2014 WL 5514378 (W.D. Wash. Oct. 31, 2014) .......................................16

*Yarde Metals, Inc. v. New England Patriots Ltd. P'ship*,
 834 N.E.2d 1233 (Mass. App. Ct. 2005) ..................................................16

*Zaslow v. Kroenert*,
 176 P.2d 1 (Cal. 1946) (en banc) ..............................................................16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 2, 8

IIB Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th ed. 2014) ............10

**NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF**
Civil Case No.: 5:15-cv-03593 NC

v

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 2, 2016, at 1:00 p.m., or as soon as the matter may be heard thereafter, in Courtroom 7, 4th Floor, 280 South 1st Street, San Jose, California, before the Honorable Nathanael Cousins, defendant Forty Niners Football Company LLC (referred to as the "49ers" or the "club" below) will and hereby does move the Court to dismiss plaintiff Amir Kazemzadeh's First Amended Class Action Complaint (Dkt. No. 26) ("FAC") with prejudice.

Pursuant to Fed. R. Civ. P. 12(b)(6), the 49ers seek an order dismissing the complaint in its entirety and with prejudice on the ground that plaintiff has failed to state a claim on which relief may be granted. Defendant's motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and such other matters as the Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

After defendants demonstrated that the original complaint failed to satisfy the most basic elements of an antitrust claim (Dkt. Nos. 22-23), plaintiff sought to resuscitate his claims by amending his complaint. Those efforts fall far short: plaintiff still fails to identify either a relevant market in which competition could have been harmed or any harm to competition. Further amendment would be futile, and the amended complaint should be dismissed with prejudice.

Plaintiff Amir Kazemzadeh, a San Francisco 49ers season ticket member, challenges the club's new ticket distribution policy. To access Levi's Stadium on game day, a ticket holder must now display either (1) a digital copy of the ticket on a smartphone or (2) a pdf print-out of the ticket. The challenged 49ers policy, which allows ticket holders to print pdf copies of their tickets only within 72 hours of the game, was adopted to reduce the potential for fraud or duplicate tickets and to provide a more secure gameday environment for fans. Pl.'s Ex. E at 3.

Plaintiff seeks to portray this innovation as an antitrust violation. Invoking the days of cardstock tickets that could be "saved or collected . . . as souvenirs" (FAC ¶ 56), plaintiff would prefer to turn back the clock to an era when a seller could physically hand a cardstock ticket to a buyer or print one or more

| NOTICE OF MOTION AND MOTION OF DEFENDANT FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF Civil Case No.: 5:15-cv-03593 NC | 1 | |

pdf copies of a ticket at will. But plaintiff's *preference* for a specific means of ticket transfer and ultimate delivery does not support an antitrust claim.

*First*, the amended complaint, like its predecessor, fails adequately to allege a relevant market. Scattered throughout the amended complaint are references to at least four different "product markets," none of which is clearly identified as a "market" in which trade was unreasonably restrained or monopolized. If plaintiff relies on a "secondary, resale market" for 49ers tickets (*id.* ¶ 1), any such market would impermissibly exclude 49ers tickets sold by the club in the first instance—as confirmed by the *Stubhub, Inc. v. Golden State Warriors* decision issued by this district one week before plaintiff filed his amended complaint. Any proposed market consisting entirely of 49ers secondary market tickets would fail for the additional reason that this single-brand product cannot comprise a market.

*Second*, plaintiff fails to allege *any* harm to competition or *any* resulting antitrust injury. Plaintiff concocts a "conspiracy" between the 49ers and Ticketmaster to "drive the resale of 49ers tickets to Ticketmaster's Ticket Exchange website," FAC ¶¶ 6, 66(a), by "carv[ing] out a single exception" to the 72-hour policy, thereby "foreclos[ing] other avenues for resale," *id.* ¶¶ 7, 30. But that assertion is doomed by the factual allegations of the amended complaint and its exhibits: The 72-hour printing restriction applies to *all* 49ers tickets, no matter where they are sold (or resold), including on the Ticket Exchange platform. And plaintiff (like all season ticket holders) had the ability to sell—and actually did sell—his tickets on the platform of his choice, and to transfer his tickets *for free* and *at any time* by using a mobile app or his online Account Manager.

## ARGUMENT

Under Rule 12(b)(6), the Court should accept a complaint's well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But to survive a motion to dismiss, a plaintiff's claims must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007); *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008) (plaintiff must plead "not just ultimate facts . . . but evidentiary facts").

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

2

"On a motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is 'plausible' in light of basic economic principles." *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556). Further, recognizing "the unusually high cost of discovery in antitrust cases," in *Twombly* the Supreme Court directed courts to apply pleading requirements rigorously to avoid the time and cost associated with litigating "largely groundless claim[s]." 550 U.S. at 558-59; *see Kendall*, 518 F.3d at 1047 ("discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case").

## I.   Plaintiff Fails To Allege A Cognizable Market Under The Sherman Act.

To state a claim under the Sherman Act, "[a]ntitrust law requires allegation of . . . a [relevant] product market," which "includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 nn.3 & 4 (9th Cir. 2008); *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (internal marks omitted). A plaintiff's market definition must be plausible on its face and supported by non-conclusory factual allegations. *See Colonial Med. Grp., Inc. v. Catholic Healthcare W.*, 2010 WL 2108123, at *3-4 (N.D. Cal. May 25, 2010), *aff'd* 444 F. App'x 937 (9th Cir. 2011). "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka*, 252 F.3d at 1063.

Plaintiff fails to allege a cognizable market for two independent reasons, each of which requires dismissal of his antitrust claims. *First*, plaintiff jumps among at least four *different* proposed relevant product market(s) without specifying the relevant market(s) in which trade allegedly was unreasonably restrained or monopolized. *Second*, if plaintiff purports to focus on an alleged "secondary, resale market for 49ers tickets" (FAC ¶ 1), any such market would impermissibly exclude reasonably interchangeable products.

### A.   The Amended Complaint Fails To Identify A Specific Relevant Product Market.

A plaintiff who intends to pursue an antitrust claim "has to be clear about the market in which the alleged antitrust violation occurred, and be consistent about how the various parties at issue are involved in *that* market." *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1197 (C.D.

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

3

Cal. 2008); *see also Cascades Computer Innovation LLC v. RPX Corp.*, 2013 WL 316023, at *9 (N.D. Cal. Jan. 24, 2013) (an antitrust complaint must "specify the market or markets in which the allegedly anticompetitive acts occurred (and the effects of those anticompetitive acts on those specific markets)"); *Dutra v. BFI Waste Mgmt. Sys. of N. Am., Inc.*, 2015 WL 2251203, at *3 (N.D. Cal. May 13, 2015) (Cousins, M.J.) (dismissing complaint where plaintiff failed to allege "a cognizable relevant market or . . . [defendant's] role in the market with any specificity"). "Without a coherent market definition, the Complaint necessarily fails." *Cascades*, 2013 WL 316023, at *9 (dismissing complaint that defined at least six alleged markets but "failed to identify specifically what it considers to be the relevant market").

Like its predecessor, the amended complaint founders on its failure to identify clearly and consistently a relevant market. The new complaint discusses at least four different alleged "relevant markets," but fails to provide the precise contours of (or facts to support) any one of them:

1. Plaintiff first announces that his complaint "addresses . . . the secondary, resale market for 49ers tickets," which he describes as the market "between a Season Ticket Holder and purchasers of tickets to individual 49ers games." FAC ¶ 1; *see also id.* ¶ 24 (alleging that "resale from Season Ticket Holders" is the only "source of supply" in this "market").

2. Plaintiff next describes a "Resale Market" comprised *not* of Season Ticket Holders and purchasers, but instead of ticket resale channels: "(1) a face to face transaction; (2) a print publication; (3) an online marketplace, such as craigslist.com; and (4) an online ticketing website." *Id.* ¶ 25.

3. Still later, plaintiff alleges that "horizontal competition" has been restrained *only* in the fourth channel of this putative Resale Market—referred to variously by plaintiff as "ticket websites," "online ticket sellers," and "online ticketing website[s]." *See id.* ¶¶ 50, 52, 25. The precise contours of this "market" (and how it differs from "an online marketplace") are not addressed, although it presumably includes ticketmaster.com, stubhub.com, vividseats.com, or ticketcity.com. *See id.* ¶ 25.

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

4

4. Finally, plaintiff's monopolization claim purports to define yet another resale market—this one for "the *advance* resale of 49ers tickets"—for which no participants are identified; nor is the meaning of the word "advance" supplied. *Id.* ¶ 80 (emphasis added).

These "hopelessly muddled" market allegations doom plaintiff's Sherman Act claims at the threshold. *RMG Techs.*, 536 F. Supp. 2d at 1195; *see also Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*, 802 F. Supp. 1544, 1551 & n.5 (S.D. Tex. 1991) (dismissing complaint where, notwithstanding specific market allegations in one section, "scattered throughout the . . . complaint are numerous other possible product and geographic markets").

*Ticketmaster v. RMG Technologies, Inc.* is instructive. In that case, one of Ticketmaster's competitors alleged that Ticketmaster had developed a "scheme to obtain a monopoly in the ticket resale market." 536 F. Supp. 2d at 1193 (internal marks omitted). However, the complaint included allegations pertaining to both (1) ticket distribution services and (2) tickets themselves—products which, "as a matter of law, . . . do not belong in the same market." *Id.* at 1196. The court dismissed the complaint, finding that while "any number of markets might be intended," it was "impossible to tell from the [complaint] which one(s) [Ticketmaster's competitor] may be trying to base its case on." *Id.*; *see also Ticketmaster LLC v. Designer Tickets & Tours, Inc.*, 2008 WL 649804, at *4 (C.D. Cal. Mar. 10, 2008) (noting "confusion as to what product is at issue in the alleged 'market for secondary ticket distribution services': tickets, or ticket distribution services").

Here, too, notwithstanding plaintiff's opportunity to amend his complaint after defendants identified the issue, it remains impossible to determine from plaintiff's scattered allegations exactly what market he purports to define. Plaintiff uses the term "resale market" to refer interchangeably to (1) tickets for sale in the "secondary" market, (2) ticket resale platforms generally, and (3) online ticketing websites specifically, and he never explains what he means by (4) "advance resale" in his monopolization claim. As in *Ticketmaster*, these allegations impermissibly "blur the line between tickets and ticket distribution services." *RMG Techs.*, 536 F. Supp. 2d at 1196. The 49ers (and this Court) can only guess which market(s) plaintiff contends is (or are) being restrained or monopolized, making it

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

5

"impossible to determine the actual effect the alleged challenged conduct has had on competition." *Cascades*, 2013 WL 316023, at *9.

**B.    Any Alleged "Resale Market" For 49ers Tickets Would Impermissibly Exclude Reasonably Interchangeable Products.**

If the amended complaint is intended to "address" the "secondary, resale market between a Season Ticket Holder and purchasers of tickets to individual 49ers games" (*see* FAC ¶ 1), any such market would be impermissibly narrow in two respects: It would exclude (1) 49ers tickets sold by the club in the first instance and (2) tickets to other forms of entertainment, including, at a minimum, other sporting events and live performances.

*A "secondary, resale market" for 49ers tickets would improperly exclude tickets sold by the club in the first instance.* In his amended complaint, plaintiff seeks to distinguish between a so-called "primary" market for 49ers tickets (those sold directly by the club) and the alleged "secondary resale market" for such tickets. *See id.* ¶¶ 1, 29. But whether a buyer purchases a ticket directly from the 49ers or from a season ticket holder, that ticket will be used for precisely the same purpose: obtaining entry to a 49ers game. Plaintiff's amended complaint acknowledges as much; plaintiff recognizes that "resale from Season Ticket Holders on the secondary market" is an "alternative source of supply" for "primary" tickets issued by the 49ers. *Id.* ¶¶ 24, 29. Products that are reasonable substitutes *in use*—like tickets sold in the "primary" and "secondary" markets—define the scope of any relevant market. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 438 (3d Cir. 1997) ("A court making a relevant market determination looks . . . to the uses to which the product is put by consumers."). Accordingly, any alleged "resale market" for 49ers tickets—which expressly excludes such "primary" tickets—would fail as a matter of law. *See id.*

The recent decision in *Stubhub, Inc. v. Golden State Warriors, LLC*, confirms that any purported distinction between a "primary" and "secondary" market is "not cognizable as a matter of law, as neither encompasses all interchangeable substitute products even when all factual inferences are granted in [plaintiff's] favor." 2015 WL 6755594, at *3 (N.D. Cal. Nov. 5, 2015) (internal marks omitted). In that case, StubHub alleged that the Golden State Warriors required that any resale of Warriors tickets occur through Ticketmaster. *Id.* at *1. Like plaintiff here, StubHub based its Sherman Act claims on a "theory

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

6

1   that there exist two separate product markets for Warriors tickets . . . , the difference between those

2   markets being whether the purchaser obtains from the supplier a 'primary' ticket or a 'secondary'

3   ticket." *Id.* at *3.

4          The court dismissed those claims for failure to allege a cognizable product market because "a

5   'primary' ticket to a Warriors game and a 'secondary' ticket to a Warriors game are 'commodities

6   reasonably interchangeable by consumers for the same purposes'"—namely, to obtain entry to a

7   Warriors game. *Id.* (quoting *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 395

8   (1956)); *see also RMG Techs.*, 536 F. Supp. 2d at 1197 ("Why are retail and resale tickets not acceptable

9   economic substitutes for each other? The Court is reasonably sure that . . . [a consumer] would not care

10  whether her ticket was purchased through Ticketmaster in the 'retail' market or from a ticket broker in

11  the 'resale' market . . . as long as she is able to attend the [event]."). For the same reasons, plaintiff's

12  antitrust claims—both of which are premised upon an artificial distinction between these two markets—

13  must be dismissed.

14         ***A market limited to 49ers tickets would be impermissibly based on a single product and***

15  ***improperly exclude tickets to other forms of entertainment.*** "[C]ourts have been extremely reluctant to

16  embrace . . . single-brand market theory[.]" *In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 997

17  (N.D. Cal. 2009). As one appellate court has noted, "[c]ases in which dismissal on the pleadings is

18  appropriate frequently involve . . . failed attempts to limit a product market to a single brand, franchise,

19  institution, or comparable entity that competes with potential substitutes." *Todd v. Exxon Corp.*, 275

20  F.3d 191, 200 (2d Cir. 2001); *see also, e.g.*, *Tanaka*, 252 F.3d at 1065 (dismissing complaint that

21  implausibly excluded competing athletic programs from the proposed market). The reason is clear: to

22  "define the relevant product market as that group of products over which defendants' anticompetitive

23  conduct exercises control" would "as an analytical matter read[] the market definition step out of the

24

25

26

27

28

| NOTICE OF MOTION AND MOTION OF DEFENDANT FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF Civil Case No.: 5:15-cv-03593 NC | 7 | |

Sherman Act." *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 265 (S.D.N.Y. 2000) (internal marks omitted) (rejecting relevant market for "Cats-related intellectual property").[1]

To survive a motion to dismiss, plaintiff must do more than merely allege the existence of a single-brand market; he must allege facts "plausibly supporting the counterintuitive claim" that a product is "so unique that it suffers *no* actual or potential competitors." *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008) (describing such circumstances as "rare and unforeseen"); *see, e.g.*, *Tanaka*, 252 F.3d at 1063 (plaintiff's "conclusory assertion that the 'UCLA women's soccer program' is 'unique' and hence 'not interchangeable with any other program in Los Angeles'" failed to identify "an appropriately defined product market"); *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 86-87 (2d Cir. 2000) (rejecting assertion that a Yale education is "unique"; "there are many institutions of higher learning providing superb educational opportunities"), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "If a complaint fails to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand, . . . a court may grant a Rule 12(b)(6) motion." *Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y. 1993).

Here, plaintiff fails to allege any facts in support of his bald assertions that "there is no substitute for a ticket to a 49ers game." FAC ¶ 23; *see also id.* (alleging that tickets to another athletic event "would not provide an adequate substitute for a ticket to a 49ers football game"); *id.* ¶ 29 (repeating allegation that "there are no economic substitutes for tickets to a 49ers game"). These conclusory allegations simply cannot support any (reasonable) inference that a 49ers game is "so unique that it

---

[1] *See also, e.g.*, *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 479 (3d Cir. 1992) ("[P]laintiffs' basic theory is that the relevant . . . market consists only of new Chrysler cars manufactured for sale in the United States. . . . But such a narrow definition makes no sense in terms of real world economics, and as a matter of law we cannot adopt it."); *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 763 (7th Cir. 1996) (refusing to accept product market limited to one company's products); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (affirming district court's dismissal of claim for failure to plead a relevant market; proposed relevant market consisting of only one specific television channel was defined too narrowly).

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

8

suffers no actual or potential competitors." *Apple*, 586 F. Supp. 2d at 1198. Consumers seeking live entertainment, for example, may turn to any number of substitute products, including other sporting events or live performances—all of which are inexplicably excluded from plaintiff's alleged "resale" market, with no effort made to distinguish them. *See Re-Alco Indus.*, 812 F. Supp. at 391.

Courts have regularly rejected similar attempts to cabin a relevant market to entertainment featuring a particular sports team or performance. In *Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, for example, the court concluded that "a single brand product like producing live-action Cubs games cannot be a relevant market" because "there are economic substitutes for live Cubs games such as other baseball games, sporting events, or live entertainment." 2015 WL 5731736, at *3 (N.D. Ill. Sept. 30, 2015) (internal marks omitted).[2] Similarly, in *Theatre Party Associates, Inc. v. Shubert Org., Inc.*, plaintiff's proposed market for advance-sale tickets to Phantom of the Opera "[did] not comprise a viable antitrust market"; plaintiff "failed to explain why other forms of entertainment, namely other Broadway shows, the opera, ballet or even sporting events are not adequate substitute products." 695 F. Supp. 150, 154 (S.D.N.Y. 1988); *see also Carell*, 104 F. Supp. 2d at 265 ("Nothing in the Complaint explains why products associated with other Broadway shows or other forms of entertainment are not reasonably interchangeable with products associated with *Cats*").

---

[2] *See also., e.g.*, *Spinelli v. NFL*, 96 F. Supp. 3d 81, 112 (S.D.N.Y. 2015) (dismissing complaint that did not address "why the commercial licensing of MLB or NCAA-related photographs (or any other sports-related photographs) is not reasonably interchangeable with the commercial licensing of NFL-related photographs"); *Adidas Am., Inc. v. NCAA*, 64 F. Supp. 2d 1097, 1103 (D. Kan. 1999) (rejecting "market for the sale of NCAA Promotional Rights" because "Adidas has failed to explain [why] . . . sponsorship agreements with teams or individuals competing in the National Football League, the National Basketball Association, the Women's National Basketball Association, Major League Baseball, Major League Soccer, or the Olympics, are not reasonably interchangeable with NCAA promotion rights or sponsorship agreements"); *Weber v. NFL*, 112 F. Supp. 2d 667, 673-74 (N.D. Ohio 2000) (web domain names bearing the marks of NFL teams (*e.g.*, "jets.com") did not constitute a separate relevant market; "the market should not be defined in terms of [the clubs'] specific marks, but rather in terms of domain names in general."); *Formula One Licensing, B.V. v. Purple Interactive Ltd.*, 2001 WL 34792530, at *1, *3 (N.D. Cal. Feb. 6, 2001) (dismissing complaint alleging a market "for sales of FIA Formula One Championship-related motor sport goods and services"); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 328-31 (2d Cir. 2008) (rejecting a proposed relevant market limited to licenses for Major League Baseball (MLB) intellectual property while excluding licenses such as those for "football, boxing, basketball, ice skating, hockey, and NASCAR").

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

9

1    Plaintiff's assertion that there is a strong rivalry between "fans" of the 49ers and "fans" of the

2    Oakland Raiders (FAC ¶ 23)—the *only* fact alleged in support of his otherwise conclusory market

3    allegations—is a red herring. Even accepting the dubious premise that 49ers games are attended only by

4    "fans" who would never buy a ticket to see the other professional *football* team in the Bay Area, the

5    amended complaint offers no support for plaintiff's implausible assertion that tickets to *other* sporting or

6    entertainment events, such as a Golden State Warriors game, a San Jose Sharks game, or a concert,

7    would not be adequate substitutes. *See, e.g.*, *Right Field Rooftops*, 2015 WL 5731736, at *3 ("a live

8    Cubs game is not so unique that there is no substitute").

9    Even with respect to tickets to football games, "strictly personal preference . . . is irrelevant to

10   the antitrust inquiry." *Tanaka*, 252 F.3d at 1063; *see also Newcal*, 513 F.3d at 1045 ("The consumers do

11   not define the boundaries of the market; the products or producers do.") (citing *Brown Shoe Co., Inc. v.*

12   *United States*, 370 U.S. 294, 325 (1962)). That a consumer may be a Budweiser drinker does not mean

13   that Coors and Miller would not be part of the same relevant market; the antitrust inquiry focuses on

14   "reasonable interchangeability of use and cross-elasticity of demand." *Tanaka*, 252 F.3d at 1063

15   (internal marks omitted).

16   That is why, "[e]ven where brand loyalty is intense, courts reject the argument that a single

17   branded product constitutes a relevant market." *Apple*, 586 F. Supp. 2d at 1198 (internal marks omitted);

18   *Blizzard Ent. Inc. v. Ceiling Fan Software LLC*, 941 F. Supp. 2d 1227, 1234 n.6 (C.D. Cal. 2013)

19   (same); *see also* IIB Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 533e, p. 274 (4th ed.

20   2014) ("the degree of power inherent" even in a successfully differentiated brand "is almost uniformly"

21   insufficient "to make each brand a separate market"); *see, e.g.*, *Global Discount Travel Servs., LLC v.*

22   *Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997) ("A consumer might prefer . . . Pepsi

23   because she prefers the taste, or NBC because she prefers 'Friends,' 'Seinfeld,' and 'E.R.' . . . but at

24   base, Pepsi is one of many sodas, and NBC is just another television network."). Thus, the tenacity with

25   which (some) fans may support the 49ers simply does not bear on the question of which products are

26   reasonably interchangeable with a ticket to one of their games. *See Apple*, 586 F. Supp. 2d at 1200

27   (rejecting allegations of strong brand loyalty to Apple as support for single-brand Mac OS product

28

market; the "brand loyalty [plaintiff] alleges, if true, suggests that [defendant's competitive] efforts have borne fruit").

## II.   Plaintiff Does Not Adequately Allege Antitrust Injury.

Plaintiff must plead, and ultimately establish, antitrust injury—that is, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977). Here, plaintiff cannot meet that burden; his complaint fails to allege two necessary elements of antitrust injury: (1) a harm "that is of the type the antitrust laws were intended to prevent" (*i.e.*, a harm to competition) and (2) a causal injury to plaintiff "that flows from that which makes the conduct unlawful." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013).

### A.   Plaintiff Fails Adequately To Allege Harm To Competition.

The crux of plaintiff's alleged harm to competition—the basis for his claim that competition has been "foreclosed" (FAC ¶ 30)—is that, as a result of the new ticketing policy, he now has to engage in "additional steps" to sell a ticket on his preferred platform. *Id.* ¶ 40. Specifically, he has to log onto the StubHub platform during the 72-hour pre-game window to complete a ticket resale. *Id.* ¶¶ 36, 40. That is not harm to competition; it is a ticket holder's frustration that he cannot use a third-party ticketing platform in exactly the same way that he did last year.

Not surprisingly, nothing in plaintiff's complaint supports a claim of harm to competition. While plaintiff baldly asserts that defendants have positioned the NFL Ticket Exchange as "the only way for Season Ticket Holders to resell their tickets" by preventing them from "complet[ing] resale transactions" and "foreclos[ing] other avenues for resale" (*id.* ¶¶ 30, 47, 75; *see also id.* ¶¶ 28-40, 50-54), such conclusory language is not sufficient to survive a motion to dismiss. *See, e.g.*, *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) ("[T]o plead injury to competition . . . sufficiently to withstand a motion to dismiss, a section one claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably." (internal marks omitted)); *see also Seattle Totems*

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

11

*Hockey Club, Inc. v. NHL*, 783 F.2d 1347, 1350 (9th Cir. 1986) (Section 2 requires "the existence of actual injury to competition in that market.").[3]

Indeed, plaintiff's conclusory allegations of harm to competition are fatally undermined by the allegations of his own amended complaint. Specifically, the amended complaint goes to great lengths to illustrate exactly how a season ticket holder can "complete the sale" on StubHub and other online ticketing websites. *See* FAC ¶¶ 34-36. Moreover, the exhibits that plaintiff chose to attach to his complaint—both an email sent to plaintiff from Levi's Stadium in July 2015 and the Levi's Stadium FAQs—confirm that nothing prevents a seller from listing and selling tickets on *any* online ticketing website that the seller may choose: a ticket holder may "transfer or resell game tickets . . . on *any* resale site" and "may post [his or her] game tickets . . . for resale using *any number of different secondary market ticket platforms*." Pl.'s Exs. A at 3, E at 3 (emphases added). And, as plaintiff's own experience confirms, that is precisely what consumers do; plaintiff admits that he was able to list and sell tickets on StubHub. FAC ¶ 44.

The only allegation that plaintiff offers in support of his theory that the challenged conduct "adversely affected and substantially lessened competition" is that "[t]he number of 49ers tickets listed on websites other than the Ticket Exchange has declined, while the number of 49ers tickets listed for sale on Ticket Exchange has increased." *Id.* ¶ 51. But a decrease in the number of tickets available on some sites, with an increase on others, is not indicative of a lessening of competition; such a shift is perfectly consistent with, and indeed indicative of, a robust, competitive market. *See Brantley*, 675 F.3d at 1202 (alleged "effects [that] are fully consistent with a free, competitive market" do "not sufficiently allege an injury to competition"); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

---

[3] Plaintiff's suggestion (at FAC ¶ 75) that selecting NFL Ticket Exchange as "the only NFL-approved way to buy tickets" is anticompetitive is puzzling; companies routinely select preferred or approved vendors without raising any issues under the antitrust laws. *See, e.g.*, *Valley Prods. Co. v. Landmark, a Div. of Hosp. Franchise Sys., Inc.*, 128 F.3d 398, 404 (6th Cir. 1997) ("HFS as holder of its trademark is within its legal rights . . . to refuse to certify plaintiffs as approved vendors, even though that denial may have the unfortunate effect of excluding plaintiffs from the HFS guest amenity market.").

| NOTICE OF MOTION AND MOTION OF DEFENDANT FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br>Civil Case No.: 5:15-cv-03593 NC | 12 | |

574, 588 (1986) ("conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy").

That is particularly true because the amended complaint contains *no factual allegations* that 49ers tickets are available for printing or download any sooner on Ticket Exchange than they are on StubHub (or any other resale avenue). Nor could plaintiff make such allegations; he acknowledges that, no matter where such tickets are sold, they are never available until 72 hours before the game, including on Ticket Exchange. FAC ¶ 39 (Ticket Exchange requires a buyer to "log in to his or her ticket account to print or resell the ticket within the 72-hour window after tickets are released"); *see also* Pl.'s Ex. C (Ticket Exchange listing confirming tickets would not be "ready to print" until three days before the game). Plaintiff offers no support for the implausible claim that this universally applied policy harmed competition, and it is not surprising that he makes no factual claim that the shift in sales caused Ticket Exchange to obtain a monopoly share of those sales.

Finally, neither of plaintiff's other two asserted harms to competition is plausible. "Face to face transactions" are not "curtailed" (FAC ¶¶ 32-33); had plaintiff sought to conduct such a sale even weeks or months before a game—and there is no allegation that he did—he could have met the potential purchaser, reached an agreement, opened his smartphone Account Manager mobile app (or logged into the Account Manager online portal), and immediately transferred the ticket without charge. *See* Pl.'s Ex. A at 3 (a season ticket holder has the "full capacity to transfer . . . game tickets . . . using the mobile app, [or] online Account Manager . . . [for] free"); *see also* Pl.'s Ex. E at 3 ("You may begin forwarding your tickets at any time once your account balance is paid in full.").

Similarly, "sales and transfers by print publication or in the online marketplace" are not foreclosed (FAC ¶¶ 32-33); had plaintiff sought to "list a ticket for sale in the San Francisco Chronicle, or on craigslist" before the 72-hour game window (*id.* ¶ 33)—and, again, there is no allegation that he did—he could have transferred the ticket to a willing purchaser for free. Here, plaintiff's putative "harm to competition" boils down to his preference for using the United States Postal Service instead of email to deliver his tickets to a purchaser.

**NOTICE OF MOTION AND MOTION OF DEFENDANT FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
Civil Case No.: 5:15-cv-03593 NC

13

Plaintiff may prefer that, as part of any resale transaction, the tickets become available to the purchaser (or the seller) more than 72 hours before a game, or that he receive cardstock tickets instead of electronic tickets. But those preferences do not constitute injury to competition and do not constitute antitrust injury. *See name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 2013 WL 2151478, at *6 (C.D. Cal. Mar. 4, 2013) ("The injury Plaintiff alleges to its preferred business model is insufficient to support an antitrust claim.") *aff'd sub nom.*, *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124 (9th Cir. 2015).

### B.       Plaintiff Does Not Allege Antitrust Injury.

Plaintiff purports to assert two antitrust injuries: (1) that he was unable to sell certain tickets and (2) that he received less money than he would have received had he sold the tickets earlier (*i.e.*, that he was unable "to adjust ticket prices for market conditions"). FAC ¶¶ 44, 78. Neither of these alleged injuries satisfies plaintiff's burden to plead antitrust injury.

*First*, plaintiff's claim that he was "unable to sell [certain] tickets through StubHub" (*id.* ¶ 44) is not "an injury which bears a *causal connection* to the alleged antitrust violation." *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 922 (9th Cir. 2015) (emphasis added). Plaintiff does not attribute to the 49ers' policy his inability to sell "other tickets through StubHub, or other resale means" (FAC ¶ 44; *see also* ¶ 47). He does not allege that he listed these other tickets on StubHub or another resale site or that he attempted a face-to-face or print-publication transaction; nor does he allege that his inability to sell any ticket was the direct result of the 49ers' policy, as opposed to, for example, his failure to price his tickets at a market-appropriate level.[4] Nor does plaintiff allege that he even tried to use Ticket Exchange (or any channel other than StubHub) to sell his tickets; rather, his preference to sell on StubHub was absolute. Thus, "it is impossible to determine whether [defendants'] alleged conduct had any actual effect on" plaintiff. *See, e.g.*, *Korea Kumho Petrochemical v. Flexsys Am. LP*, 2008 WL

---

[4] Plaintiff states that he "attempted to list tickets for sale on stubhub.com," but he does not allege that he ever actually listed the tickets—as he acknowledges could be done even under the new policy. *Compare* FAC ¶ 42 *with id.* ¶¶ 35-36 *and* Pl.'s Ex. B.

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

14

686834, at *4 (N.D. Cal. Mar. 11, 2008) (dismissing antitrust claims); *Somers*, 729 F.3d at 963-65 (affirming dismissal; plaintiff's antitrust claim was "implausible in the face of contradictory market facts alleged in her complaint" and there were "other 'obvious alternative explanation[s]" for the challenged conduct).

*Second*, plaintiff does not allege antitrust injury when he claims that, as a *seller* of a "limited and valuable commodity" (FAC ¶ 25), he received less money for the tickets that he sold than he would have received absent the policy (*id.* ¶ 44). As a threshold matter, plaintiff's conclusory allegation, based only on "information and belief," does not pass muster. *See, e.g.*, *Emps. Trust Fund v. Am. Empire Building Corp.*, 2015 WL 4538070, at *3 (N.D. Cal. July 27, 2015) (Cousins, M.J.) (pleading based on "information and belief" "insufficient" where plaintiff listed elements of offense "without any further factual allegations," including "provid[ing] any facts to suggest why it believes" its position). More fundamentally, there is no factual support for plaintiff's allegation that he actually "received less money for the tickets" than he would have received absent the new ticketing policy. FAC ¶ 44.

Plaintiff also could not have suffered antitrust injury as a seller from either the alleged "steep transaction fees for using Ticket Exchange" or the alleged "price floor" on Ticket Exchange. *Id.* ¶¶ 44, 48, 49, 78. The complaint confirms that plaintiff never attempted to list his tickets on Ticket Exchange; that is why he does not know the fees charged on the Ticket Exchange website (*id.* ¶ 48). Under these circumstances, plaintiff cannot plausibly allege that either putative element of the Ticket Exchange platform caused him antitrust injury. *See, e.g.*, *Korea Kumho*, 2008 WL 686834, at *4, *6.

Moreover, if the market price of a 49ers ticket fell below the Ticket Exchange floor, a listing on plaintiff's preferred option of StubHub (or another resale avenue) would have been *more*—not less— attractive. And if the 49ers policy foreclosed sales on StubHub and other non-Ticket Exchange platforms, any higher ticket prices resulting from the Ticket Exchange price floor would have *benefitted* plaintiff as a seller. But there "'can be no antitrust injury if the plaintiff stands to gain from the alleged unlawful conduct.'" *Somers*, 729 F.3d at 963 (quoting *American Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1056 (9th Cir. 1999)).

1

### III.    Plaintiff Fails To State A Claim For Trespass To Chattels.

"Under California law, trespass to chattels lies where an intentional interference with the possession of personal property has proximately caused injury." *Intel Corp. v. Hamidi*, 71 P.3d 296, 302 (Cal. 2003) (internal marks and emphasis omitted). But plaintiff has no property interest in his game tickets, which are not tangible goods. Accordingly, allegations of a "right to access, print, and sell those tickets" (FAC ¶ 83) cannot state a claim. *See, e.g.*, *Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1329 (11th Cir. 2008) ("purchase of a ticket granted [plaintiff] at most a revocable license to a seat"); *Williams v. NFL*, 2014 WL 5514378, at *4 (W.D. Wash. Oct. 31, 2014) ("Tickets to a Seahawks game are not tangible goods, but revocable licenses . . . ."); *Yarde Metals, Inc. v. New England Patriots Ltd. P'ship*, 834 N.E.2d 1233, 1236 (Mass. App. Ct. 2005) ("purchase of a ticket to a sports or entertainment event typically creates nothing more than a revocable license").

Even if that were not the case, the trespass to chattels cause of action would not extend to the challenged printing limitation. Taken to its logical extension, plaintiff's trespass to chattels theory suggests that a club would violate the law any time there was any delay in delivery of tickets, including—for example—if the club took time to process or print tickets before delivering them. Indeed, under plaintiff's theory, the club could not put any restrictions on the ticket without engaging in trespass to chattels. The law cannot be stretched to reach such a result. *Compare, e.g.*, *Zaslow v. Kroenert*, 176 P.2d 1, 7 (Cal. 1946) (en banc) (permitting trespass to chattels claim where defendant took a co-tenant's personal possessions from their house and placed them in storage without the plaintiff's consent) *and Thrifty-Tel, Inc. v. Bezenek*, 54 Cal. Rptr. 2d 468, 472-73 (Ct. App. 1996) (plaintiff stated a claim for trespass to chattels where had the full functionality of its phone system until defendants' minor sons hacked into its telephone lines), *with Kandel v. Brother Int'l Corp.*, 2009 WL 9100406, at *1 (C.D. Cal. Feb. 13, 2009) (dismissing trespass to chattels claim where "Defendants took no action after Plaintiffs took possession of the property, and Plaintiffs never had possession of the alleged functionality"; "California courts would be unlikely to expand the law of trespass to chattels to include [such a] situation").

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

16

## <u>CONCLUSION</u>

For the reasons stated above, the amended complaint—plaintiff's second bite at the apple—should be dismissed with prejudice.

Respectfully submitted,

December 23, 2015

By: _____/s/ Derek Ludwin_____
Derek Ludwin (*pro hac vice*)
Ross A. Demain (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000 (telephone)
(202) 662-6291 (facsimile)
dludwin@cov.com
rdemain@cov.com

Ashley Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
(415) 591-6000 (telephone)
(415) 591-6091 (facsimile)
asimonsen@cov.com

*Attorneys for Forty Niners Football Company LLC*

NOTICE OF MOTION AND MOTION OF DEFENDANT
FORTY NINERS FOOTBALL COMPANY LLC TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Civil Case No.: 5:15-cv-03593 NC

17